Matter of Spano v Spano (2019 NY Slip Op 00285)





Matter of Spano v Spano


2019 NY Slip Op 00285


Decided on January 16, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 16, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
REINALDO E. RIVERA
SYLVIA O. HINDS-RADIX
BETSY BARROS, JJ.


2018-03840
 (Docket Nos. F-7474-17/17A, F-7474-17/17B)

[*1]In the Matter of Francis Spano, appellant,
v
Jade Spano, respondent. (Proceeding No. 1)
In the Matter of Jade Spano, respondent, v Francis Spano, appellant. (Proceeding No. 2)


Ian S. Mednick, Hauppauge, NY, for appellant.



DECISION & ORDER
In related proceedings pursuant to Family Court Act article 4, the father appeals from an order of the Family Court, Suffolk County (David Morris, J.), dated March 14, 2018. The order, insofar as appealed from, denied the father's objections to so much of an order of the same court (Aletha V. Fields, S.M.), dated January 16, 2018, made after a hearing, as directed him to pay the sum of $880 per week in child support and 100% of the child care expenses, extraordinary expenses, extracurricular expenses, and unreimbursed health-related expenses and health insurance expenses of the parties' children, and granted the mother's enforcement petition directing him to pay certain child support arrears.
ORDERED that the order dated March 14, 2018, is modified, on the law, by deleting the provisions thereof denying the father's objections to so much of the order dated January 16, 2018, as directed him to pay 100% of the child care expenses, extraordinary expenses, extracurricular expenses, and unreimbursed health-related expenses and health insurance expenses of the parties' children, and granted the mother's enforcement petition directing him to pay certain child support arrears, and substituting therefor provisions granting those objections, and directing the father to pay 90% of the child care expenses, extraordinary expenses, extracurricular expenses, and unreimbursed health-related expenses and health insurance expenses of the parties' children; as so modified, the order dated March 14, 2018, is affirmed insofar as appealed from, without costs or disbursements, the order dated January 16, 2018, is modified accordingly, and the matter is remitted to the Family Court, Suffolk County, for a new determination of the amount of the father's child support arrears and arrears of other payments relating to the children, if any, in accordance herewith.
The parties, who have two children together, were divorced by a judgment of divorce entered September 10, 2015. The parties executed a stipulation of settlement dated May 15, 2015, which was incorporated but not merged into the judgment of divorce, in which they agreed, inter alia, to share joint custody of the children, with the mother having physical custody. The mother waived any right to maintenance, but was granted exclusive use and occupancy of the marital residence for a period of two years from the date the agreement was executed. The parties agreed to opt out of the basic child support obligations under the Child Support Standards Act (hereinafter the CSSA) (see Family Ct Act § 413), and that the father would pay the sum of $4,500 per month for child support [*2]until two years had passed and the mother's period of exclusive use and occupancy of the marital residence had ended, at which time "the child support shall be re-calculated in accordance with the Child Support Standards Act," and "child care and all other extras shall be revisited for pro rata share." The reasons for the deviation from the CSSA were stated as "the limited financial resources of the custodial parent for the time at which she attends college to secure a teaching degree, coupled with the ability of the non-custodial parent to provide an increased amount of support."
At the conclusion of the two-year period, the father filed a petition to enforce the child support provisions of the stipulation, seeking a recalculation of his child support obligation in accordance with the CSSA. The mother filed a petition to enforce the child support provisions of the stipulation, alleging that the father was in arrears. Following a hearing, in an order dated January 16, 2018, the Support Magistrate granted the father's enforcement petition and directed the father to pay $880 weekly in child support, 50% of the children's college education expenses, and 100% of the child care expenses, extraordinary expenses, extracurricular expenses, and unreimbursed health-related expenses and health insurance expenses of the children. The Support Magistrate also granted the mother's enforcement petition and directed the father to pay certain child support arrears. The father filed timely objections to the Support Magistrate's order, which the Family Court denied in an order dated March 14, 2018. The father appeals from the order dated March 14, 2018.
The CSSA "sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the number of children to be supported, to combined parental income up to a particular ceiling" (Matter of Freeman v Freeman, 71 AD3d 1143, 1144; see Holterman v Holterman, 3 NY3d 1, 11; Matter of Cassano v Cassano, 85 NY2d 649, 653; Matter of Eagar v Suchan, 128 AD3d 961, 962). When the parties' combined income is more than the statutory cap—in this case, $143,000 (see Social Services Law § 111-i[2][b], [c])—"the court has the discretion to cap the support obligation at an amount based on the statutory cap or order child support above the statutory cap, based on the factors set forth in Family Court Act § 413(1)(f) and/or the child support percentage set forth in Family Court Act § 413(1)(c)(3)" (Matter of Santman v Schonfeldt, 159 AD3d 914, 915; see Matter of Cassano v Cassano, 85 NY2d at 654; Matter of Peddycoart v MacKay, 145 AD3d 1081, 1084). Since the statute "explicitly vests discretion in the court and [because] the exercise of discretion is subject to review . . . some record articulation of the reasons for the court's choice to apply the percentage is necessary to facilitate . . . review" (Matter of Cassano v Cassano, 85 NY2d at 655; see Matter of Eagar v Suchan, 128 AD3d at 962; Matter of Wienands v Hedlund, 305 AD2d 692, 693; Rohrs v Rohrs, 297 AD2d 317, 318). Further, a support magistrate need not rely upon a party's account of his or her own finances, but may impute income based upon the party's past income or demonstrated earning potential (see Matter of Napoli v Koller, 140 AD3d 1070, 1071; Matter of Rohme v Burns, 92 AD3d 946, 947; Matter of Strella v Ferro, 42 AD3d 544, 546).
The father argues that the Support Magistrate should have imputed income to the mother commensurate with her earning potential as a teacher. While a court may determine a child support obligation on the basis of a party's earning potential, rather than the party's current economic situation, the calculation of the party's earning potential must have some basis in law and fact (see Matter of Joseph v Dalmacy, 270 AD2d 489; Petek v Petek, 239 AD2d 327, 328). Here, the father did not establish what the mother's earning potential was as a teacher and there is no such evidence in the record. Accordingly, the Support Magistrate providently exercised her discretion in imputing income to the mother in the sum of $21,896 based upon her actual income in 2016, as reflected in income tax statements (see O'Brien v O'Brien, 163 AD3d 694, 695-696; D'Amico v D'Amico, 66 AD3d 951, 952; Gezelter v Shoshani, 283 AD2d 455, 456-457).
The record indicates that the children enjoyed a middle-class lifestyle, with extracurricular activities and summer camp. The Support Magistrate properly determined that the children's needs will be met, and their lifestyle maintained, with an award based upon applying the child support percentage to the total combined parental income. Accordingly, the Support Magistrate's determination to calculate child support obligations based on the parties' combined parental adjusted gross income of $203,393.04, which is $60,393 more than the $143,000 statutory cap, is adequately supported by the record, and was not an improvident exercise of the Support Magistrate's discretion (see Matter of Keith v Lawrence, 113 AD3d 615, 616; Iarocci v Iarocci, 98 [*3]AD3d 999, 1001).
However, the parties' stipulation of settlement required the father to pay a "pro rata share" of "child care and all other extras" after the two-year period had expired. Accordingly, the Family Court erred in denying the father's objections to so much of the Support Magistrate's order as directed him to pay 100% of those add-on expenses (see Matter of Wallin v Wallin, 53 AD3d 663, 665; Matter of Nelson v Nelson, 48 AD3d 688; Cohen-Davidson v Davidson, 291 AD2d 474, 475). Since the father's pro rata share of the total combined parental income was 90%, he should have been directed to pay only 90% of those expenses.
Moreover, it appears that the the Support Magistrate miscalculated the father's child support arrears by miscalculating the credits due him. Accordingly, we must remit the matter to the Family Court, Suffolk County, for a new determination of the amount of the father's child support arrears and arrears of child care expenses, extraordinary expenses, extracurricular expenses, and unreimbursed health-related expenses and health insurance expenses of the children.
The father's remaining contentions are without merit.
SCHEINKMAN, P.J., RIVERA, HINDS-RADIX and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court